HAMITER, J., dissents from the denial of defendant's application for a rehearing.

49 So.2d 423

**GREGORY et al. v. HARDWICK.**

No. 39129.

Nov. 6, 1950.

Rehearing Denied Dec. 11, 1950.

Lunn & Trichel, Shreveport, for plaintiffs-appellants.

Blanchard, Goldstein, Walker & O'Quin, Shreveport, for defendant-appellee.

HAMITER, Justice.

Louise Cook Hardwick died on March 3, 1947, being survived by no forced heirs and leaving a nuncupative will by public act in which she declared as follows:

"This is my last will and testament. I revoke all prior wills heretofore made by me.

"I hereby will and bequeath all the rights, title and interest which I may have in any property whatsoever in equal proportions, share and share alike to Louise McCarthy of Alma, Arkansas; Byrd Morris Lantz of Shreveport, Louisiana, and Katie Lee Bettis and Louisa Gregory of Shreveport, Louisiana.

"I hereby appoint Milam King of Checotah, Oklahoma, Milton Trichel of Shreveport, Louisiana, and Louisa Gregory of Shreveport, Louisiana, as executors of this will."

Following the death of the testatrix the will was attacked; but its validity was upheld. See McCarty v. Trichel, 217 La. 444, 46 So.2d 621. Later, it was probated in

cause No. 96,891 in the district court of Caddo Parish.

This suit was instituted by Louisa Gregory, who is the duly qualified testamentary executrix of the succession and a legatee, and also by the legatees Byrd Morris Lantz and Katie Lee Bettis. Named as the principal defendant was Pleas O. Hardwick (hereinafter referred to as the defendant), the surviving husband of the decedent. Also made a party to the suit was Neckley M. Ferris, an attorney at law of Caddo Parish who was appointed in the probate proceedings to represent decedent's absent heirs.

The prayer of plaintiffs is for judgment in favor of the succession ordering the defendant to file a true and detailed account of "all funds and properties received by him from his wife, or from her estate at her death, or left in his possession by her death or the dissolution of the community between them, and of his administration thereof, together with a true and detailed account of all rents, revenues and profits therefrom from the date of the dissolution of the community to the filing of the account." Plaintiffs further pray that the succession be recognized as the owner of an undivided one-half interest in a certain parcel of real estate in the City of Shreveport and in "all other property formerly belonging to the community between them, or purchased with funds derived therefrom, and as the sole owner of all properties received by him from his wife." Also, plaintiffs pray for judgment against defendant

and in favor of the succession "for the full amount due by him to his said wife, and for all rents, revenues and profits derived from said properties from the dissolution of the community to the settlement of the accounts."

To plaintiffs' original and supplemental petitions the defendant tendered exceptions of vagueness, misjoinder of parties defendant, no cause of action and no right of action. The district court overruled the mentioned first two exceptions, did not pass upon the exception of no cause of action, and sustained the exception of no right of action. As a consequence of the ruling on the latter exception, which resulted from a consideration of plaintiffs' pleadings and attached exhibits, the suit was dismissed. From the judgment plaintiffs are appealing.

In this court defendant (appellee) filed an exception of no cause of action, and he has argued it along with his exception of no right of action. It is doubtful that we are required to determine the exception of no cause of action filed here, inasmuch as a similar exception was not passed upon by the district court. Nevertheless, we have the right, under Code of Practice, Article 902 and the jurisprudence of this court, to entertain it; and we shall give it consideration, as well as the sustained exception of no right of action on which the district court's judgment of dismissal is based, particularly since appellants' counsel offer no serious objection to our so doing. And for the consider-

ation of both exceptions the allegations of fact of plaintiffs' pleadings (original and supplemental petitions with attached exhibits) are taken as true.

These allegations disclose that the decedent and the defendant were married in 1922, and that in 1923 they established their matrimonial domicile in Shreveport. On March 8, 1943, she obtained a judgment of separation from bed and board, and on the same date the parties entered into a property settlement contract. Under the terms of this contract decedent would convey to defendant her full interest in all of the community property (except a few personal items), and for that interest she would receive the total sum of $18,000, payable as follows: $2500 cash, $3500 upon the signing of a final judgment of divorce, and $12,000 within two years after the date of such divorce judgment.

In October, 1943, some seven months from the date of the property settlement contract, there occurred a reconciliation of the parties and a re-establishment of the matrimonial domicile, and thereafter they lived together until July 22, 1946, during which time they continued to make community income tax returns and to buy and sell properties as husband and wife in full community. On the latter date they again separated; however, in December, 1946, they effected a reconciliation.

The property settlement contract of March 8, 1943, was not carried out inasmuch as its fulfillment was dependent on a judgment of final divorce which was never obtained; and decedent did not receive the consideration therein stipulated to be paid her, except possibly the initial cash payment of $2500. The result of all of which was that the community as it existed on March 8, 1943, then owning assets having a minimum value of $79,791.34, has never been divided.

Other allegations of plaintiffs' pleadings are that decedent, during her lifetime, received by inheritance and by donation separate and paraphernal funds and properties, some of which were utilized for the benefit of the community of acquets and gains that existed between her and her husband and others were turned over to defendant for his administration and control; but that the exact amounts thereof are unknown to plaintiffs. Since decedent's death the defendant has continued to hold, control and administer her paraphernal funds and properties, as well as all of those which formerly belonged to the community.

The decedent left no forced heirs and left no regular legal heirs within the State of Louisiana, her closest kin being divers first cousins residing in other states, none of whom have appeared to claim any part of her estate.

The defendant has failed and refused to account to plaintiffs or to Neckley M. Ferris, the attorney for absent heirs, for the monies and properties due by him to decedent's succession, notwithstanding repeated amicable demands.

The succession of decedent owes ordinary and preferred debts, as well as inheritance taxes, and it is necessary that the plaintiff testamentary executrix determine and marshal the succession's assets and obtain an accounting from defendant so that such charges can be paid.

Under the exception of no right of action (sustained by the district court) counsel for appellee contend, to quote from their brief, that:

"(1) An executrix without seizin has no right to institute suit for recovery of real estate or for partition and settlement of community property or for an accounting.

"(2) Legatees under a universal title have no seizin and, consequently, no right to institute suit for recovery of real estate or for partition and settlement of community property or for an accounting."

■ As to the latter contention, which will be discussed first, we do not agree that the plaintiff legatees are legatees under a universal title. Rather, in our opinion, they are universal legatees, they having been favored with a legacy which falls within the definition contained in Civil Code, Article 1606, reading: "A universal legacy is a testamentary disposition, by which the testator gives to one or several persons the whole of the property which he leaves at his decease." In the will, above quoted, the testatrix bequeathed to plaintiffs and another "all the rights, title and interest which I may have in any property whatsoever * * *." This, unquestionably, is a

testamentary disposition by which the testatrix gave to several persons the whole of the property left by her at her death. It is true that the legatees, under additional provisions of the will, were bequeathed the entire estate "in equal proportions, share and share alike." But these provisions did not serve to transform an otherwise universal legacy into a legacy under a universal title, the latter of which is one whereby a testator bequeathes a certain proportion of the effects of which the law permits him to dispose. Civil Code, Article 1612. The provisions, from a legal standpoint, would be important in determining a question of accretion under Civil Code, Articles 1706 to 1709, inclusive; but no such question is presented by this case.

Defense counsel, in support of their conclusion that plaintiffs are legatees under a universal title and are without seizin, cite only Succession of Lambert, 210 La. 636, 28 So.2d 1; but that decision is not authority for the position taken. The primary question considered and determined in the majority opinion there was one respecting testamentary accretion.

Appropriate here is the case in our early jurisprudence of Shane and Withers v. Withers' Legatees, 8 La. 489, it having presented for consideration a will in which the testator, having no forced heirs, bequeathed to his wife and two sisters his whole estate in the proportion of one-third to each. The court held that the favored persons were universal legatees who suc-

ceeded to the whole of the estate of which the testator died possessed to the exclusion of all others. The Withers decision has never been overruled; in fact, it has been reaffirmed numerous times.

■ Considering then that these plaintiffs are universal legatees and that the testatrix was survived by no forced heirs, they enjoy seizin of the effects of the succession. "When, at the decease of the testator, there are no heirs, to whom a proportion of his property is reserved by law, the universal legatee, by the death of the testator, is seized of right of the effects of the succession, without being bound to demand the delivery thereof." Civil Code, Article 1609. Moreover, they are heirs, by the institution of a testament, according to Civil Code, Article 884 which states: "The person who has become the universal successor of the deceased, who is possessed of all his property and rights, and who is subject to the charges for which the estate is responsible, is called the heir, no matter whether he be such by law, by the institution of a testament or otherwise."

It follows that plaintiffs, being universal legatees and instituted heirs with seizin, clearly possess the interest and have the right to prosecute this suit in which they pray for judgment in favor of the succession ordering defendant to account for all of decedent's properties and funds under his control and recognizing the succession as the owner of certain assets which belonged to decedent.

In support of their position that the testamentary executrix (who was not given seizin by the will) has no right to institute this suit, defense counsel rely primarily on Civil Code, Article 1660, which reads in part: "But if the executor testamentary be merely appointed testamentary executor, without any other power, his functions are confined to see to the execution of the legacies contained in the will, and to cause the inventory and other conservatory acts of the property of the succession to be made."

■ By these provisions the executrix, in our opinion, is not precluded from joining the other plaintiffs in obtaining for the succession the relief sought in this action. To the contrary they recognize the performance of certain functions (execution of the legacies and the making of the inventory) which this executrix cannot undertake until she obtains the desired accounting and otherwise ascertains the extent and value of decedent's estate. The information is necessary also for the marshalling of decedent's assets and the payment of debts and inheritance taxes which the succession owes, these being merely ordinary and usual administrative duties.

■ But irrespective of the codal provisions just discussed Article 123 of the Code of Practice, as interpreted by this court, appears to authorize a joining by the testamentary executrix with the other plaintiffs herein. It recites: "Testamentary executors may appear, and defend all

the actions brought against the succession they administer, when none of the heirs are present or represented in the State; but if all the heirs, or any one of them, be present or represented, none but personal actions can be brought against the testamentary executor alone. All real actions, such as those of revendication, and the like, must be brought both against the testamentary executor and the heirs present or represented." This article has been held to be applicable to suits brought by the executor as well as to suits against him. Woodward v. Thomas, 38 La.Ann. 238. In the instant case it is to be noticed that no heirs at law of the testatrix are present or represented in the state. However, there are three heirs by the institution of an instrument present (universal legatees as pointed out supra), and they are parties plaintiff in the action.

In connection with their exception of no cause of action filed here defense counsel assert that plaintiffs' original and supplemental petitions set forth three separate, distinct and unrelated demands as follows:

"(1) To recover an undivided one-half interest in certain real property acquired by Pleas O. Hardwick on March 17, 1944, which date of acquisition is subsequent to the date of judgment of separation from bed and board.

"(2) To have declared null and void the agreement, in three parts, between Pleas O. Hardwick and his wife, Louise Cook Hardwick, whereby the parties fully, finally and completely partitioned and settled their respective interests in the community previously existing and all personal rights and claims, one against the other.

"(3) For an accounting of community property and separate and paraphernal property alleged to be in the possession of Pleas O. Hardwick."

Then counsel say that the exception should be sustained as to each of these.

To discuss the listed demands in their reverse order, the allegations of plaintiffs show that defendant holds, controls and administers all of the properties formerly belonging to the community that existed between him and decedent, as well as paraphernal funds and properties of the decedent that were entrusted to him or left in his care by her death. Clearly these allegations state a cause for the accounting sought, especially since the plaintiffs do not know (as they aver) the exact descriptions and amounts of all of the succession assets allegedly being held by the defendant.

Also associated with plaintiffs' demand for the accounting are the allegations that the property settlement agreement of March 8, 1943, is null and void. Under this agreement, as before shown, the decedent was to receive for her interest in the community property the total sum of $18,000, the greater part of which ($15,500) was payable on or after the signing of a final judgment of divorce. According to plaintiffs pleadings, however, the contract was not carried out

due to the fact that a judgment of divorce was never obtained. This being true it would seem that there has resulted a failure of consideration, rendering the agreement ineffectual as plaintiffs insist.

But defense counsel argue: "* * * The first payment under the contract was made at the time of its execution; the second payment is due upon the final judgment of divorce, while the third and fourth payments are due on or before one and two years after the signing of the judgment of divorce. But as will be noted, the last two payments may be paid any time after the signing of the contract since they are payable on or before a certain date. * * *"

This argument is not impressive. What it overlooks is the fact that in a suit seeking the enforcement of the agreement the defendant could plead well and successfully that the contracted payments can mature only on or after the signing of a divorce judgment, an occurrence that is now impossible in view of the wife's death.

In all events, however, the question of whether or not there has been a settlement of the community by the controverted contract can best be determined on a trial of the merits of the cause.

Plaintiffs' demand for a recognition of the succession as owner of an undivided one-half interest in a certain parcel of real estate in the City of Shreveport is largely founded on the allegations that such property was purchased by decedent and defendant together with funds received by them from the sale of a three acre tract of land that had been acquired by the community of acquets and gains prior to the separation of the parties. Clearly these allegations state a cause of action as to such parcel and justify a consideration of the demand on its merits.

For the reasons assigned the exception of no cause of action filed in this court is overruled. Also, the judgment of the district court is reversed and set aside, the exception of no right of action sustained there is now overruled, and the case is remanded for further proceedings according to law and not inconsistent with the views herein expressed. The costs of this appeal shall be paid by defendant, and all other costs shall await the final determination of the suit.