127 So.2d 822 (1961)
Morris C. FONTENOT, Plaintiff-Appellant,
v.
GREAT AMERICAN INDEMNITY COMPANY, Defendant-Appellee.
No. 203.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1961.
Rehearing Denied March 29, 1961.
*823 McGee & Soileau, by Daniel J. McGee, Mamou, for plaintiff-appellant.
Lewis & Lewis, by John Shaw, Opelousas, for defendant-appellee.
Before SAVOY, TATE and CULPEPPER, JJ.
CULPEPPER, Judge.
On May 10, 1960 plaintiff filed this workmen's compensation suit alleging that he is totally and permanently disabled as the result *824 of a back injury sustained while in the course and scope of his employment with G. J. Deville Lumber Company on August 14, 1958 at which time the defendant, Great American Indemnity Company, was the workmen's compensation insurer for said employer. Plaintiff alleges that at the time of said accident he experienced an acute burning pain in the lower back which became progressively more severe, requiring him to seek medical aid and to be hospitalized on August 17, 1958 for a period of six days. Petitioner alleges further that despite his injury and because he desired to continue working for his employer, with whom he had been employed for over eleven years, he returned to work for said employer approximately three months after the said accident; that on or about May 18, 1959 while working for the same employer and more particularly while shoveling gravel into a truck petitioner suddenly experienced a burning sensation in the region of his back injured on August 14, 1958 as aforesaid; that he again received medical treatment and performed no heavy manual labor for approximately three months after the incident of May 18, 1959, and that although he was still suffering pain in his back he returned to work for his employer on or about September 5, 1959 and attempted to perform light duty work until October 2, 1959 when his pain became so severe that he had to discontinue performing manual labor altogether. Plaintiff alleges that although he does not know the exact nature of his back injury he believes that his present total and permanent disability "stems from the accident which occurred on or about August 14, 1958, and that petitioner's injury developed into total and permanent disability to perform his usual and customary work on or about May 18, 1959," (when he reinjured his back shoveling gravel).
To this petition defendant filed what he denominated in the heading as an "Exception of No Right of Action" but in the first paragraph of said exception he states that the plaintiff has "no right or cause of action" because the plaintiff in proceedings entitled "Morris Fontenot versus C. J. Deville Lumber Company and Consolidated Underwriters" bearing Number 12817 on the docket of the Thirteenth Judicial District Court, accepted a court approved compensation settlement for the same total and permanent disability for which he is now suing herein and, therefore, is not entitled to recover for the same injuries again. The defendant also filed an exception of prescription alleging that from the face of the petition it is apparent that more than one year has elapsed since the date of the injury which is alleged to be the cause of disability. The lower court sustained the exception of prescription from which judgment plaintiff has appealed. The trial judge did not rule on the exception of "no cause or right of action".
Addressing ourselves first to the exception of prescription we find that although no testimony was taken at the hearing thereof the defendant did file in evidence a certified copy of those certain proceedings entitled "Morris Fontenot versus G. J. Deville Lumber Company and Consolidated Underwriters" hearing Number 12817 on the docket of the Thirteenth Judicial District Court, in which proceedings the plaintiff and the defendants therein joined to petition the court's approval of a compromise settlement of a workmen's compensation claim. The petition in those proceedings contains the following allegations:
"The employee contends that on August 14, 1958, while acting in the course and scope of his employment with G. J. Deville Lumber Company, he sustained a back injury while lifting a keg of nails and that although he returned to work for the employer, he was performing his work with some difficulty until May 18, 1959, while shoveling gravel into a truck, he twisted and hurt his back and he further contends that as a result of both of said accidents, he was rendered totally disabled and unable to perform his usual and customary work since May 18, 1959, and therefore, the employer, G. J. Deville Lumber Company and Great American Insurance *825 Company, the compensation insurer of the said employer at the time of the first accident in August of 1958, as well as Consolidated Underwriters, the Workmen's Compensation Insurer of the employer at the time of the accident of May 18, 1959, are liable to him in solido for compensation at the rate of Twenty-Six and No/100 ($26.00) Dollars per week for four hundred (400) weeks, together with all medical expenses and charges whatsoever."
For purposes of consideration of the exception of prescription the facts consist of those which have been alleged in plaintiff's petition in the instant suit together with those which have been alleged in the petition for compromise settlement, the pertinent portion of which has been quoted above. In support of this exception defendant first calls our attention to LSA-R.S. 23:1209 which deals with prescription in workmen's compensation cases and reads as follows:
"In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident."
It is the contention of the defendant that in this case the injury developed on the same day as the accident, August 14, 1958, because on that very date the injury manifested itself by causing pain in petitioner's back to the extent that three days later he sought medical attention and was then hospitalized for six days, continued under the care of a physician for almost three months and then returned to work despite the fact that he was still having pain. Defendant argues that this was not a latent injury which later developed disabling symptoms but rather that it was an injury which manifested itself immediately and that under these facts prescription started on the date of the first injury and having once started it cannot be interrupted or suspended by plaintiff's later return to work. The defendant cites Spano v. Orleans Manufacturing Company, La.App., Orleans 1958, 100 So.2d 899 as authority for the proposition that where the seriousness of a known injury manifests itself immediately the prescription of one year begins to run as soon as the claimant is disabled to the extent that he leaves his employment.
The plaintiff on the other hand contends that the present case comes within the doctrine of the landmark case Mottet v. Libbey-Owens-Ford Glass Company, 1952, 220 La. 653, 57 So.2d 218, and its progeny, Johnson v. Cabot Carbon Company, 227 La. 941, 81 So.2d 2; Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522 and Brewster v. City of Shreveport, La.App., 108 So.2d 801.
In the Mottet case, supra, the plaintiff, a glass cutter, injured his back on January 27, 1946. On that same day he consulted his physician who diagnosed his condition as neuritis so he continued to work but during his regular vacation in September of 1946 he was examined by an orthopedic specialist who found symptoms of a ruptured intervertebral disc. On his return to work plaintiff was changed from cutting heavy glass to work on light glass which did not *826 require so much heavy lifting. He continued this work until March 11, 1947 when his condition became so painful that he was forced to quit work and thereafter remained totally and permanently disabled. On writs the Supreme Court reversed the judgment of the Court of Appeal which had sustained a Plea of Prescription of one year and held as follows [220 La. 653, 57 So.2d 219]:
"The plaintiff contended that his case came within the exceptions provided in Section 31 of Act 20 of 1914, as amended, LSA-R.S. 23:1209, `where the injury does not result at the time of, or develop immediately after the accident, the limitations shall not take effect until the expiration of one year from the time the injury develops'. * * * From the very wording of this amendment, an employee who receives an injury flowing from an accident that later develops into disability is excepted from the general rule and his right of action is not perempted until one year after the injury has developed. In this case the injury did not develop into total disability until March 11, 1947, at which time the plaintiff could no longer pursue his trade as a glass cutter. For us to say that he was disabled to perform the duties of his trade prior to that time would be mere conjecture on our part because he had, in fact, continued to perform the duties of his trade until that date. His suit was filed on August 4, 1947, a short time after he became disabled, and within a year from that time. Such being the case the plaintiff's suit was timely filed and the plea of peremption cannot be maintained."
The defendant argues that the Mottet case is distinguishable from the present case because there the plaintiff, although in pain, continued work and did not leave his employment until he finally could work no longer and then suit was filed within a year after he left his job, whereas in the instant case the plaintiff did quit work for three months and then returned to his employment where he "performed his work with some difficulty" until he twisted and hurt his back again and then after this second accident finally left his employment as being totally and permanently disabled. In our opinion this factual distinction does not negative the application of the Mottet doctrine to the instant case. Although in the instant case the plaintiff did, because of pain and while undergoing medical treatment, leave his employment for this interval of three months after which he returned and tried to work with some difficulty until the second accident, the total and permanent disability which he now suffers is alleged to have been caused in part by the first accident but did not develop into such a painful condition that he was required to leave his employment permanently until after the second accident. Back injuries are of such a nature that their progress is uncertain and unpredictable and the employee who suffers such an injury and then stops working for an interval or intervals for medical treatment and in an effort to recover sufficiently to return to work cannot be said to have known that his injury was so serious that it would eventually result in permanent and total disability. Like the plaintiff in the present case, these employees suffering with pain in their back do not know the exact nature of their injury and although they might at intervals leave their employment and then return and try to work, it cannot be said that the "injury has developed" as that term is used in LSA-R.S. 23:1209 until after the employee has finally left his employment and cannot return because he is disabled from performing the type of work which he was doing at the time of the accident.
Johnson v. Cabot Carbon Company, supra, decided by the Supreme Court in 1955 follows the Mottet case and is factually similar thereto in that immediately after plaintiff first injured his back he suffered pain and underwent medical treatment but continued in his employment and *827 the court held that the prescription of one year started as of the time he left his employment.
In Wallace v. Remington Rand, Inc., supra, decided by the Supreme Court in 1956 the plaintiff, a millwright, injured his back and immediately thereafter suffered pain and underwent medical treatment but he was placed on light duty and continued in his employment. Approximately six months later he wrenched his back again and from then on the pain became worse until sixteen months after the date of his original accident he finally left his employment. The defendant contended that the claim was prescribed, suit having been filed more than one year after the date of the injury. The Supreme Court held that although the wages paid to the plaintiff during this sixteen month period were fully earned by him and could not be regarded as wages paid in lieu of compensation so as to interrupt the running of prescription, nevertheless prescription did not begin to run until the plaintiff finally left his employment although he had worked in pain and performed only light duties during most of said sixteen months.
From the above resume of the Mottet, Johnson and Wallace cases, we perceive that none of them involved the precise factual situation presented in the present case where the plaintiff temporarily left his employment for an interval of three months and then returned to work again where he shortly thereafter suffered a second injury and then finally left his employment and never returned. However, we find that although our Supreme Court has not passed on this exact issue, our Courts of Appeal have extended the Mottet doctrine to cover this situation.
In the case of Brewster v. City of Shreveport, La.App. Second Circuit, 1959, 108 So.2d 801, 802, the plaintiff was injured on July 18, 1956 and he promptly notified his immediate superior and requested medical attention and continued to attempt to work at "irregular intervals" until finally on September 29, 1956 he became unable to work and left his employment. Plaintiff's suit was filed September 16, 1957. In overruling defendant's plea of prescription the court held as follows:
"Analyzing the pronouncements in Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218; Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522, and Watson v. United States Tobacco Co., La.App., 87 So.2d 205 (writs denied), we concluded that the phrase "development of injury" must be interpreted as meaning the time from which an employee can no longer pursue his trade or occupation."
In the case of Manuel v. Travelers Insurance Company, La.App. First Circuit, 1950, 46 So.2d 319 the plaintiff sustained a knee injury on April 30, 1948, was operated on and given medical treatment, and was paid compensation through October 1, 1948 at which time he was discharged as being completely recovered. On October 27, 1949 the plaintiff suffered a recurrence of the injury when he bent over to pick up his razor while shaving before reporting to work with a subsequent employer. The Court of Appeal reversed the trial court's sustaining of defendant's plea of prescription and held that the one year limitation did not start on the date of the last compensation payment following plaintiff's discharge as being completely cured and that the prescription of one year had not expired when plaintiff suffered his second injury "as a direct and proximate result of the accident of April 30, 1948". Thus we see that in the Manuel case the court did not consider it significant that the plaintiff left his employment for an interval during which time he underwent an operation and was given medical treatment following which he was actually discharged as completely recovered and thereafter worked for another employer. The fact which the court did consider significant was that the disability for which plaintiff was seeking recovery was *828 causally connected with the original accident.
In this connection we have noted the case of Finley v. Hardware Mutual Insurance Company, 237 La. 214, 110 So.2d 583, 586 in which the issue was not prescription but rather which of two accidents caused the disability but our Supreme Court cited the above cases dealing with prescription and held as follows:
"The issue for determination in a compensation case of this type is whether the disability of the employee has causal connection with the injury he sustained. When it is shown to have causal connection, the employee, who has instituted his suit within two years from the date of the accident (see R.S. 23:1209), as in this case, is entitled to recover. Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218 and Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522."
Under the cited authorities and for the reasons hereinabove set forth we have no difficulty in concluding that in the present case the plaintiff's injury did not fully manifest itself nor did the "injury develop" within the meaning of LSA-R.S. 23:1209, at the time he temporarily left his employment for the purpose of undergoing medical treatment. It is our opinion that the injury did not "develop", in the sense that this term is used in the cited statute, until after the plaintiff had returned to work and suffered his second injury which together with the first injury combined to cause the total and permanent disability which forced plaintiff to finally leave his employment. The disability is clearly alleged to be causally related to both accidents. As regards the first accident, the effects thereof did not fully manifest themselves and develop until the new injury and under the above cited authorities the prescription of one year did not begin to run until the plaintiff finally left his employment after he was reinjured. Defendant's exception of prescription must therefore be overruled.
With regard to the "exception of no right or cause of action" filed in the lower court, we must necessarily consider it as two separate exceptions for the basic reason that the evidence introduced at the hearing may be considered in passing on the exception of no right of action but cannot be considered by us in passing on the exception of no cause of action.
The plaintiff contends, and we think correctly, that the defendant has urged no proper grounds for an exception of no right of action. The leading case which distinguishes the exception of no right of action from the exception of no cause of action is Duplain v. Wiltz, La.App., Orleans 1937, 174 So. 652, the reasoning in which has been approved by our Supreme Court in Rapides Grocery Company v. Vann, 230 La. 829, 89 So.2d 359. In Duplain v. Wiltz, supra, the plaintiff fell down the rear steps of a dwelling and brought suit against the alleged owner thereof for personal injuries. The defendant filed an exception of no right of action on the grounds that she was not the owner of the building. The court held that this defense challenged the plaintiff's cause of action as distinguished from her right of action and that such a defense could not be raised under an exception of no right of action. The court summarized its reasoning as follows:
"In other words, we think that there is a vast difference between the right of action, to which plaintiff is entitled as a matter of law, and the resultant liability vel non of the person against whom she causes this right to be asserted. The right to sue is conferred either by statute or the jurisprudence, whereas the cause to sue is legally determined after investigation of the facts presented. Here, the real challenge is not made to plaintiff's right to sue but is truly aimed against the legal lack of cause or reason for the action." [174 So. 655.]
*829 In the present case the grounds for defendant's exception of no right of action is that plaintiff has compromised and settled all claims arising out of the first accident in 1958 as defendant contends is shown by the allegations in the petition for compromise settlement entered into after the second accident, a certified copy of which compromise settlement proceedings were filed in evidence in the instant suit. In other words it is defendant's contention that the plaintiff no longer has a right to bring this suit because of the workmen's compensation claim which he alleges has been compromised and settled. Clearly this defense challenges the plaintiff's cause of action and not his right to sue. The defendant does not contend that plaintiff was not the party injured, or that he has no interest in the claim asserted or that he does not have the capacity to stand in judgment, but rather on the other hand contends that the cause of action asserted has been extinguished by compromise and settlement. For these reasons defendant's exception of no right of action is overruled.
The exception of no cause of action filed in limine in the District Court challenged the sufficiency of plaintiff's petition. Although the Trial Judge did not rule on this exception it clearly has no merit because plaintiff's petition unquestionably states a cause of action.
The defendant has also filed an exception of no cause of action in this Court of Appeal on December 30, 1960. Although we are not required to pass on the exception of no cause of action filed here, inasmuch as a similar exception was not passed upon by the District Court, nevertheless we have the right to do so under Code of Practice, Article 902 and the jurisprudence interpreting same and we shall consider it. See Succession of Douglass, 225 La. 65, 72 So.2d 262; Gregory v. Hardwick, 218 La. 346, 49 So.2d 423, and Roy v. Mutual Rice Company of Louisiana, 177 La. 883, 149 So. 508.
In passing upon the exception of no cause of action filed in this court we shall consider the entire record and particularly plaintiff's original petition and the certified copy of the proceedings in the workmen's compensation settlement hereinabove described which were filed in evidence in connection with the exception of prescription and the exception of no right of action in the lower court. In support of its exception of no cause of action filed in this court, the defendant contends that in said compromise the plaintiff accepted a settlement for the same total and permanent disability for which he is now seeking recovery and he is therefore not entitled to recover again for these same injuries.
Although the defendant argues strenuously that in said compromise settlement proceedings the plaintiff released his employer, G. J. Deville Lumber Company from any workmen's compensation claim arising out of either the accident which occurred on August 14, 1958 or the accident which occurred on May 18, 1959, a reading of these proceedings as shown by the above quoted portion thereof indicates clearly that they were drawn with the specific intent of releasing G. J. Deville and Consolidated Underwriters from liability only as to the accident of May 18, 1959 and that all rights were specifically reserved against G. J. Deville and his insurer, Great American Indemnity Company, as to all liability arising out of the accident which had occurred on August 14, 1958.
The petition, the judgment and the Act of Release in said settlement proceedings all specifically restrict the effect thereof to the accident of May 18, 1959, and reserve all rights as to the accident of August 14, 1958, the language in the release being as follows:
"* * * which amounts are received in full, final and complete compromise settlement and satisfaction by way of compromise of all claims, rights, actions and causes of action and demands which he may or might have *830 under the Compensation Laws of the State of Louisiana or any other law whatsoever against G. J. Deville Lumber Company, its agents, employees and representatives, and Consolidated Underwriters, its agents, employees and representatives in any way growing out of or in any way connected with the alleged accident and injuries to the said Morris Fontenot on or about May 18, 1959.
"Appearer further declares that he does hereby expressly reserve any and all rights, claims, actions and rights of action whatsoever which he may or might have against Great American Insurance Company or any other party who may or might be responsible as a result of any and all accidents and incidents described in the above and foregoing petition."
The law is well settled that in instances of two accidents, both of which are contributing causes of the ultimate disability, the employers, and their insurers, at the times of both accidents may be held solidarily liable. Finley v. Hardware Mutual Insurance Company, 237 La. 214, 110 So.2d 583; Brock v. Jones and Laughlin Supply Company, La.App., 39 So.2d 904; White v. Taylor, La.App., 5 So.2d 337; Stansbury v. National Auto and Casualty Insurance Company, La.App., 52 So.2d 300. Under the allegations here the parties liable for the first accident and the parties liable for the second accident are indebted in solido to plaintiff who has separately compromised as to the second accident, reserving his rights against the parties liable for the first accident. This he had a perfect right to do under LSA-C.C. art. 2203. See Landry v. New Orleans Public Service, 177 La. 105, 147 So. 698; Cusimano v. Ferrara, 170 La. 1044, 129 So. 630; Marcus v. Checker Cab Co., 10 La.App. 297, 120 So. 408 and Garafola v. Superior Ins. Co. of Dallas, Texas., La.App., 105 So.2d 339.
The final issue for determination by the Court is as regards the lower court's denial of plaintiff's motion for preliminary judgment under LSA-R.S. 23:1316. The facts are that plaintiff filed suit herein on the 10th day of May, 1960 but he did not at that time nor at any time thereafter in these proceedings obtain an order from the District Judge fixing the case for hearing on the merits. Defendant was served on May 11, 1960 and filed its exceptions of prescription and no right or cause of action on the 3rd day of September, 1960. No answer was ever filed by the defendant. On the day of the hearing of these exceptions on October 14, 1960 the plaintiff, at the outset, presented to the court a written motion for preliminary judgment on the grounds that although the defendant had filed exceptions he had failed to file an answer within ten days after service as, he contended, is required by LSA-R.S. 23:1315. The trial judge denied the motion for preliminary judgment and proceeded to hear the exceptions after which he sustained the exception of prescription and dismissed plaintiff's suit, as is shown by his judgment dated October 14, 1960.
It is apparent from a reading of LSA-R.S. 23:1315, LSA-R.S. 23:1316 and LSA-R.S. 23:1317 that the procedure for the institution of workmen's compensation suits differs from that in ordinary suits in that in ordinary suits the case cannot be set for trial on the merits until after an answer has been filed, whereas in workmen's compensation suits the cited statutes provide that at the same time the plaintiff files his petition he can obtain an order from the trial judge fixing the case for hearing on the merits, not less that three weeks after the date of service of the petition. The statute provides further that within ten days after service of the petition the defendant "shall answer the same" but that the trial court may in its discretion grant further time for filing the answer. LSA-R.S. 23:1316 provides that if the time fixed for filing the answer or the delay granted by the court for the filing thereof elapses without any answer having been filed then upon simple request of the petitioner *831 the court shall immediately enter a preliminary judgment providing for compensation payments as claimed in the petition and this judgment shall remain in effect until such time "as the hearing of the issue on the merits is fixed by an order of court at the request of the defendant."
The obvious purpose of the above statutory provisions is to obtain an early trial on the merits in workmen's compensation cases by allowing the plaintiff to fix the case for trial, through order of court, even though no answer has been filed, and requiring that the defendant file an answer to the petition within ten days after service in order that the case might be ready for expeditious hearing on the merits on the trial date which was fixed by the court. The provisions for preliminary judgment are in the nature of a penalty against the defendant for delaying the trial on the merits by his failure to file an answer within ten days or within an extension thereof granted at the discretion of the trial judge. See Anderson v. St. Paul Mercury Indemnity Company, La.App., 84 So.2d 878 and Duplechien v. States Exploration Company, La.App., 94 So.2d 460, for authority that the preliminary judgment is a penalty for delay.
Under the above reasoning it is our opinion that the lower court properly denied the motion for preliminary judgment because the defendant's failure to answer did not in any way delay a trial on the merits, the plaintiff never having obtained an order setting the case for trial, either at the time he filed his original petition or subsequently.
For the reasons hereinabove set forth the judgment of the lower court sustaining defendant's exception of prescription is reversed and annulled and judgment is entered herein overruling defendant's exception of prescription as well as defendant's exception of no right of action and exception of no cause of action, filed in the lower court and the exception of no cause of action filed in this court. The ruling of the lower court denying plaintiff's motion for preliminary judgment is affirmed. This case is remanded to the lower court for further proceedings. All costs incurred in the lower court thus far, as well as all costs of this appeal, are assessed against the defendant.
Reversed in part, affirmed in part and remanded.

On Application for Rehearing.
Rehearing denied, en Banc.